Mr. Boutrous, good morning. Good morning, your honors. May it please the court, I'm Theodore J. Boutrous Jr. representing Chevron and its expert witnesses, Drs. Mackay and Kelsch. This case presents an important issue of first impression in this circuit that is of great practical importance to lawyers, to litigants, and to courts. The question presented is a clean legal issue and it's whether and how the 2010 amendments to Rule 26 of the Federal Rules of Civil Procedure affect the work product doctrine as it applies to expert witnesses who are going to testify in a case. Rules 26B3A and B3B establish the work product doctrine by incorporating the Supreme Court's decisions in cases like Hickman v. Taylor, U.S. v. Nobles, and establish a doctrine that is meant to create what I think of as a zone of tranquility for lawyers and their legal teams and their colleagues, experts. And their experts. Does any court agree with your reading of this? So far, the only court to address it has been the Tenth Circuit on appeal. District courts, one district court in Texas. Is that the, which, which? My understanding is the district court in Texas dealt with a related but a different issue. It agreed with our position on what Rule 26B2, excuse me, A2B and the change it brought. It's the National Western Life Insurance v. Western National Life Insurance case. The Texas court? Yes. Any other court? And the Eleventh Circuit, right? The Eleventh Circuit is pending. That's exactly right, Your Honor. So it's The Eleventh Circuit case came from Florida? Correct, Your Honor.  That's correct, Your Honor. And the district courts didn't agree with you here. The Tenth Circuit didn't agree with you. Other than Texas, you got anybody on your side? I'm looking for this court to do the right thing and get this right. Do we have to accept your argument that the text is unambiguous for you to prevail? No, Your Honor. We think I'm having trouble with the unambiguous argument if we've spent this many courts and this many people have spent this much time on it. It, you know, I hate to say I rest my case, but if we have to talk about something so much and so long and in so many different ways, is it really unambiguous? I do think there's a resistance, particularly when we're looking at the Civil Rules of Procedure, to just looking at the text. The advisory I love unambiguous language. I mean, it makes it so much easier. Your Honor, first, to go to your question, I think the advisory committee knows there's a little bit in there for everybody. But I think at the end of the day, they support our position. The purpose of the amendments in 2010 was to narrow discovery from experts from data or other information. It was that other information rule, 26A2B, that caused courts in 1993 to begin this bright line rule that said everything that an expert had had to be disclosed. It was a compelled disclosure. In 2010, the rule was changed to narrow it to facts or data. So it was focused on facts or data. And the rules, the advisory committee notes make clear that was meant to stop this process where parties would have to hire two experts on the same issue. One to help them, scientists, engineers, to help them prepare their case. And then another expert on the same topic to testify. The advisory committee notes say that. Under the Ecuador position, the same thing would have to happen, because the only thing that would be protected are draft reports and communications directly between the lawyer and the experts. So I think the advisory committee notes, even if the court says we want to look at those, support our position in this case. And I'm just going back to ‑‑ Just to ask you quickly, just because I want to know if this is off the table. Am I correct that Chevron is not challenging the district court's ruling here beyond the broader issue of how to interpret Rule 26? In other words, you're not contesting the district court's treatment of various categories of documents beyond the implications that flow from your main argument. That's correct, Your Honor. There are 262,000 pages of documents that have been produced that include the facts and data considered by the experts informing their opinion. We are not challenging that. This is 6,000 or 7,000 pages of documents that are bread and butter work product and fall under Rule 26B3A, which says materials prepared in anticipation of litigation or trial by or for a party or its representative. There's no question what we're talking about here are e‑mails, notes, e‑mails from Chevron's chief scientist, who's been working on this case for a long time with the legal team, e‑mails from her to the experts. Sometimes lawyers are in it. It's infused with the legal strategy and the legal analysis of, for example, this court‑appointed expert report in Ecuador, which was later shown to be completely bogus and ghostwritten by the plaintiff's lawyers, e‑mails analyzing that where the scientist from Chevron, so Chevron, is sending e‑mail, Chevron's creating a document in anticipation of litigation, asking the scientists who are experts to help analyze this report. Those experts helped expose that it was fraudulent. Communication between the lawyer and the experts are protected, right? Yes. There's no dispute about that? There's no dispute about that, Your Honor. In fact, the lower courts in Ecuador's position is that the only protections for materials involving experts are Rule 26B4C, which is the attorney provision, and then Rule 26B4B, which covers draft reports. But the problem with that argument is both of those provisions cite back to the general work product provision. They make clear that Rule 26B3A and B, which create the general work product doctrine, are the source of the protection of draft reports and attorney lawyer communications. And they don't say this is the only protection. In fact, going to Judge Callahan's point about the advisory committee notes, the advisory committee notes regarding 26B4C, which is the attorney expert communications provision, explicitly say this does not mean there cannot be protection developed as a matter of privilege or work product. So it's clear that if you want to look at the rules or the advisory committee notes, that it was meant to ensure that there's disclosure of facts or data so the parties can test the expert who's going to testify, figure out what they considered, test their assumptions and the like. But to create a zone where they could work with the legal team integrally to analyze, discuss strategy, to determine what the other side's experts were saying, and to assist them in preparing their case, to make it easier for the courts so that the litigants would come to court fully prepared, to reduce the cost. This is one of those, I think, rare, somewhat rare cases where I think the positions don't cut either way if you're a plaintiff or a defendant. This was meant to create better rules of the road for all litigants so that you could have your team, you could have an expert, you could have them advise you on these engineering issues, technical issues, scientific issues, epidemiology. And then you could also have them testify to the extent they're going to testify, they must disclose the facts or data upon which they rely and which they just generally considered. So it's a broad area of discovery that still exists. Let me just ask you in terms of if there were to be splits in the circuit about how to, is this really something that the Supreme Court would be interested in? Or if this is so confusing to everyone, would they just go back and change the rule again? I think the Supreme Court would be interested, Your Honor, and I'm looking to this court to help create the split on this because I think that, to be quite honest. We're not real anxious. We've got enough of that. But why isn't it sort of like an act of Congress in the sense that they can fix it if a court says it means something that it doesn't really mean? It really falls right squarely in the Supreme Court's zone because the court is part of the rulemaking process. And so I think it's one of the most interesting, clear rule interpretation issues I've seen. Because to go back to the plain language just for a second, Rule 26b-3, the work product provision, speaks broadly that it covers all material prepared in anticipation of litigation by or for a party. So here, expert e-mails to the scientist at Chevron and expert e-mails back from her, copying lawyers, talking about how to deal with the other side. That's bread and butter work product. So then the question is, is there an exception that says that material isn't covered? And there really are three provisions here at issue that the Equator points to. One is Rule 26a-2b, which is the source of the removal of work product protection. That's the rule that was put in place in 1993 that required experts to disclose, at the time, all data or other information. So it was a compelled waiver of otherwise covered work product material. And then in 2010, that was revised because, as the advisory committee notes, mentioned, the committee had heard complaint after complaint that that provision, that other information language, was being interpreted to mean a bright-line rule that whatever the expert had, had to be disclosed. And the courts used the language, including California courts, that it was a bright-line rule. So the change in 2010 to facts or data was meant to narrow that considerably down to factual information and to allow precisely what we're arguing here should be allowed. The expert has to testify and disclose information, facts and data that they considered, but not every piece of information in their files, so that they can work with the litigation team, including the client, including lawyers, to prepare for the case. Well, let me ask you this about, I guess it's Bjorkman, that in that particular case, they seem to get into whether an expert is an agent. Yes. All right. I'm wondering in terms of, this is hypothetical, and I'm just thinking through all aspects. All right. That you lost there, in that sense. And the question comes to mind whether that's going to create a whole lot of satellite litigation about whether an expert is an agent or not. You're not going to like this result anyway. But if the reasoning were to be that the waiver theory is easier to apply and clearly explains the distinction between treatment of consulting and testifying experts, is that an easier rule to apply than the agent rule? Well, in the agent rule, one is not, there is no agent rule. Agents are covered by the work product doctrine, among others, other representatives. So the Tenth Circuit, I think, got that wrong. I don't think that the rule we're advocating is any more difficult than the testifying versus non-testifying rule, if that's your question, Your Honor. But is the agent rule, you know, what do you, do you purport that then everyone's going to be litigating whether an expert is an agent or not? No, Your Honor. Our position is that that's incorrect, that to get work product protection for a material prepared by or for a party or a representative, there's no agency requirement. Agents are one, going back to the plain text of the rule, it says buyer for another party or its representative, including the other party's attorney, consultant, surety, indemniter, insurer, or agent. Well, I know you don't agree with that. I know you don't agree with it, but that's what the Tenth Circuit said. So in the Tenth Circuit, are they going to be,  if that rule were adopted, that would create an undue complication that's unnecessary under the rule. So that's another reason why that rule, I think, is wrong. So then we're going to have this debate, are you an agent, are you not an agent? And here, experts are hired by the company and by the litigant. They are paid by the litigant to assist them in the case. So is that an agent? Were we going to have satellite litigation on that point? To that degree, it would create complication, and it's not. If you're a testifying expert, doesn't that make a difference? It's not supposed to, Your Honor. That was why the rule was amended, so that you could have someone who's a testifying expert, who they're still, you know, they're being, they're supposed to give their opinion, but they still are someone who is working for the company in connection with the case. And the rule, when it was amended in 2010, was meant to allow me to hire someone who would be a testifying expert, but also work with me to prepare the case. That was the purpose of the rule. That's what the advisory committee notes say. So then there's this question, and Judge Callahan, your point, are we going to have to figure out who's a particular expert, an agent? That gets murky, but that's not required by the rule. It's by or for any party. So it doesn't have to be an agent. Anything that's prepared by a party in connection with litigation that's meant to be kept confidential, whether it's by an agent or any other person, is covered by the work product doctrine, subject to substantial need and other tests. And so what we're arguing for is a very easy test. You apply the plain language of Rule 26b-3 on work product. There are certain exceptions that apply for experts. They have to disclose the facts or data. They have to disclose information given to them by the attorneys about assumptions they've used in their opinion. Compensation issues have to be disclosed. And then the general work product doctrine rules apply. So that avoids a complicated inquiry about agency. It avoids intruding on preparation for trial that would assist the court and assist parties in getting ready for trial and litigation. So I think the fact that district courts have been defaulting back to the old rule, which had been in place for quite a while, not since 1970. If I can just address one other aspect of the Tenth Circuit decision. The Tenth Circuit held that in 1970, the advisory committee notes indicate that the advisory committee thought no expert information should be covered. And the site's cases, all those cases involved expert reports and opinions, like we all agree must be disclosed. None of them, and there was not a default rule that anything in the hands of an expert had to be disclosed. If the court looks at the regional airport of Louisville case that we've cited, the Sixth Circuit talks about how it was 1993 when the broad language that's now been eliminated was put into Rule 26A2B. The court said at that point, the old rule where there was work product protection has been swept aside. Everything has to be disclosed. That was the significant change. The default rule was general work product applies except experts must disclose. The data, facts, opinions are going to be relying on at trial. But other than that, they could work with a team of lawyers and the client to prepare for trial. So I think the Tenth Circuit was incorrect on its historical analysis of the work product doctrine in the expert area. And it was incorrect regarding its analysis of the language of the work product principles. Your lawyer just passed you a note there. Thank you. You don't have to disclose that. I'll just tell you that right now. I see you're down to about three minutes and change. Thank you. You got it. Thank you, Mr. Boucher. Good morning. Good morning. I'm Gene Scher, and I'm appearing here for the Republic of Ecuador, which seeks, as it did in the Bjorkman case, to use the discovery that's at issue in this case to contest the opinions of Chevron's experts in an international arbitration that Chevron initiated. And as Chevron has framed the issue here, both in its opening brief on page 5 and in the district court, the sole issue before this court is a very narrow legal question, and that is does the work product doctrine in Rule 26B3A shield the work of a testifying expert, even if that work does not fall within either of the two categories that are shielded under the newly added provisions of 26B4? That's the only issue here. And as the prior discussion indicates, to rule in Chevron's favor, this court would have to create a circuit conflict. But not only that, for reasons I'll explain in a minute, the court would also have to effectively overrule its own precedent, the decision written in 1968 by Judge Browning in the Meyer case. Now, like the Supreme Court, this court has often said that in determining the meaning of a term in a statute or in a rule, it's appropriate and sometimes very important to look at the relevant historical context. In what context did the worded issue arise? And so before I talk about Chevron's linguistic arguments and why Chevron's position is barred under the doctrine of judicial estoppel, I'd like to briefly address two serious contextual errors that really infect Chevron's arguments, both here and in the lower courts, and that demonstrate really why Chevron's argument is ultimately built on a foundation of sand. First, Chevron's argument ignores the historical status of testifying experts in our system. And that context, by the way, shows why the rule that Chevron seeks here would create what the Tenth Circuit aptly called a sea change in the discoverability of expert information. As the Tenth Circuit noted, the War Product Doctrine has always been about protecting what the Supreme Court in Hickman v. Taylor called, quote, the privacy of an attorney's course of preparation, including, of course, the attorney's interactions with its agents, the word that was used in Nobles, and that's now incorporated in Rule 26b-3, agents like investigators and legal assistants, and the purpose of that rule was to ensure that attorneys can serve effectively as officers of the court in our adversarial system. And that was the Advisory Committee's rationale for codifying the War Product Doctrine in Rule 23b-3 in the first place. But as the Tenth Circuit also noted, testifying experts are a different animal. Though they work closely with attorneys, there's no doubt about that, they have always been viewed as substantially independent from the clients and the attorneys who retain them, and this court recognizes much in a slightly different context, but in its Daubert decision, on remand from the Supreme Court's famous Daubert decision, this court held that to be admissible, expert opinions must grow naturally and directly out of research that they, the experts, have conducted independent of the litigation, and in building on that theme, the Third Circuit held in a case called Kirk v. Raymark, which we cite, that because an expert is legally not subject to the control of the party that retains him, the expert, quote, cannot be deemed an agent or, by extension, a representative of either the party or the attorney. And that's why B-4 was adopted. That's one of the reasons it was adopted. That's right. So we had B-4 come along, which deals with trial preparation for experts. Right. And that's the only thing applicable to experts. That's exactly right. And B-3 is trial preparation of tangible things and documents, or, in other words, material, and that's all that applies to them, materials. Right. B-3 applies to materials, whereas B-4 applies to experts. Right. And they've defined two types of experts in B-4. That's right, one of which is protected to a greater extent than the other. And so the rule by its terms deals with the issue of experts, and the advisory committee has determined exactly how far it wishes to go in protecting the work product of experts. It treats them as a completely separate category from attorneys. Well, would you agree that the purpose of the 2010 amendments was to protect attorney opinion, and specifically to protect the two areas where it was most vulnerable to disclosure, namely draft reports and attorney expert communications? Yes, that was certainly one of the main purposes of those amendments, and the advisory committee did that in specific provisions in B-4. The draft report provision in B-4, having been in your situation before, I got bushwhacked many times in trial by producing everything my expert had. Right. Right. And so the rules have mitigated that to a great extent by protecting draft reports, which everybody knows always have a lot of input from the attorneys. So the advisory committee says we're going to have a bright line rule protecting draft reports because we know in the real world attorneys are heavily involved in that. And so, of course, a draft report is likely to reflect the attorney's mental processes. Right. And the same thing, of course, with attorney expert communications. But as the Supreme Court said recently in the Quicken Loans case, not every statute and by extension not every rule aims to achieve its purposes by every possible means. And so Mr. Boutros' concern about the possibility that a litigant may still want to hire two sets of experts, I think that's unlikely in light of the new protections. But to the extent that that's still a concern, all that says is that the advisory committee should go back and should assess the situation and perhaps add a couple of additional specific protections to guard against the problems that Mr. Boutros and others may be concerned about. But Rule 23B3A, the attorney work product protection, is not the place to do that. So the second contextual error, which really runs like a malignant cancer through all of Chevron's arguments, is that prior to 2010, the rule of broad expert discovery rested only on the expert disclosure rule in 26A2. Okay? That rule wasn't even added until 1993, and it directly governs expert reports. It doesn't govern expert discovery. And, in fact, it was Rule 26B1, which was adopted in 1970 at the same time as the work product protection was adopted in B3. It was Rule 26B1 that sets the baseline for discovery that applies to experts and everybody else. And it says that a party is entitled to discovery of everything that's relevant or potentially relevant or that might lead to the discovery of relevant information. That's the baseline rule. As long as not privileged. As long as not privileged. That's right. And almost all the cases and all the circuit court cases that existed in 1970 rejected the idea that notes by or communications with experts were considered privileged. And, in fact, the 1970 advisory committee notes cited one of those, the McKay decision. It didn't cite this court's decision in Meyer because the advisory committee notes were actually written before that decision was issued in 1968. But Meyer squarely held that expert materials are not protected by the attorney work product government. And so, as I said, this court would have to overrule that decision as well as create a circuit conflict with the Tenth Circuit in order to rule in Chevron's favor here. I struggle with your by or for term that you call a term of art. That you cited cases from two jurisdictions from the 1960s for the proposition that, quote, by or for, unquote, was a term of art limiting any protection to agents before Rule 26B3 was adopted in 1970. Are those two cases really enough to say something is a term of art? And that was understood to have specific and precise meaning distinct from the meaning in ordinary context? I don't know that it's important for the court to decide whether the term of art doctrine applies here. I found that a stretch. Our main point is that you have to look to the historical context, okay? And there's a disagreement between us and Chevron as to how you interpret the word for. Chevron wants to interpret that word in its broadest lay sense as denoting simply the recipient or the beneficiary of some action. And we think that it ought to be understood in its narrower legal sense. And, in fact, in 1970 and yet again today, the word for has a narrower connotation in legal parlance than it does in the outside world. If you look, for example, at the very first definition of the word for in Black's Law Dictionary from 1968, it defines for as, and I quote, in behalf of, in place of, or in lieu of. And that's the way I used the word for when I introduced myself initially. And that's the way the word for is typically used in legal parlance. And that's the sense in which that word was used by the state court decisions that we cited. And so whether the term of our doctrine technically applies doesn't really matter. The important point is the word for had a more specialized, narrower meaning in the legal context than it has in the outside world. And especially when you interpret that word in light of the context and in light of the history that we've just discussed, I think there can be no doubt that the narrower meaning is correct. Well, let me ask you about the Tenth Circuit case that, you know, obviously you're happy with the bottom line. Do you think that the agency analysis is really the best way to go on that? I think the Tenth Circuit was right in saying that what distinguishes that list of representatives in 26B3A is that they are all capable of being agents of a party or, in the case of a legal assistant, which is not mentioned in that list, they're all capable of being agents of the party or the attorney. And so I think the Tenth Circuit was right about that. For reasons we've already discussed, a testifying expert is not legally capable of being an agent of the party or the attorney because otherwise he would lose his qualification to render opinions at trial. Why is it that you struggle so much with that and just don't hop to the idea that experts was not intended to be covered under 3? I agree with that. They certainly were not. That agents didn't intend to cover experts. It certainly didn't. That agents was just whatever other agents you could come up with and it would get along with that list. But if you're going to go to experts, you go to 4. That's exactly right, Your Honor, because experts are dealt with in their own provision. They didn't have to be dealt with through the back door in B3A. That's why I don't understand why you're so anxious to adopt the Tenth Circuit's idea. Well, maybe I'm being overly inclusive. Because it seems like the way that the Tenth Circuit analyzed it, that there could be satellite litigation over whether a given expert is an agent. No, I don't think that's true, Your Honor, for the reason that I just tried to articulate. As a legal matter under, you know, certainly under the Third Circuit's decision and the Raymark case and others, there really is just no authority for the idea that a testifying expert can ever be an agent of the party or the attorney because that would be disqualifying. But the problem is that there are other experts that are also covered under 4. They're not testifying experts, but they're covered under the rule. So we don't have to worry about agent. Well, I think that's right. You don't have to worry about it. And for that reason, there needn't be satellite litigation. And certainly I don't think the Tenth Circuit was inviting satellite litigation on that point. They were making an issue at that point. Well, I felt like their opinion invited it, as my good colleague may suggest, because they did not say, Come on. We have 3. It talks about materials and trial preparation. And we have 4, which talks about experts. And we've got all the potential experts covered in 4. We don't have to go back to 3. And perhaps that's something that this Court could address in its opinion and ensure that there's no confusion on that point. Chevron also argues that a testifying expert should be considered a representative under that list of representatives in 26B3A. And for reasons we've discussed, a testifying expert can't be an agent, and it can't be a representative of the party either. Now, all of Chevron's arguments are also flatly contradicted by the 2010 Advisory Committee notes, which this Court has said it looks to for guidance and insight in interpreting the rules, which makes sense. For one thing, the 2010 notes say the following. They say communications the expert had with anyone other than the party's counsel are unaffected by the rule change and thus still discoverable. But under Chevron's interpretation, communications with other experts and non-attorney employees of the client will also be shielded. And that's flatly contrary to what the Advisory Committee says.  basis of those opinions. But under Chevron's interpretation, much information about the development of an expert's opinion would be off-limits to discovery. If you look at the little chart, the Venn diagram that Chevron has, I think at page 21 of its brief in this case, it shows a great deal of potentially discoverable material that's blacked out or grayed out as being off-limits to discovery. Much of that material is going to have to do with the development of the expert's opinions. Next, the Advisory Committee notes address the substantial need showing that would be required to overcome work product protection. And in addressing that issue, the notes confirm that, quote, it will be rare for a party to be able to make such a showing, that is a showing of substantial need, given the broad disclosure and discovery that's otherwise allowed regarding an expert's testimony. But under Chevron's interpretation, all of an expert's work papers, all of his communications with other experts, with client personnel, non-attorneys, would be shielded. And finally, the Advisory Committee notes conclude by saying that information about the expert's own development of the opinions to be presented are subject to probing in deposition or at trial. And that's really the most important policy point here. The whole point of many of these provisions is to ensure that lawyers are able to adequately cross-examine or otherwise test the opinions that are offered by experts at trial, given the tremendous privilege that experts are given in being allowed to render opinions to a jury at trial. It's so important to be able to cross-examine them effectively. But under Chevron's interpretations, lawyers trying to cross-examine an expert would do so with at least one hand and maybe two hands tied behind their backs. And so all of that taken together makes it impossible, in my view, to believe that the Advisory Committee really meant to extend the work product rule in 26B3A to testifying expert materials that don't directly involve an attorney or his immediate helpers. Can you say with a straight face that the text is unambiguous? No. No, we don't. If you just look at the text, divorce from the history and divorce from the case law that preceded it and all of that, I would say the text probably is ambiguous for reasons I said. It can be interpreted in the broad lay sense or it can be interpreted more in the legal sense. Where do you put advisory notes in terms of, you know, essentially when doing the analysis? What, you know, when you're considering, you know, sort of legislative history, you know, where do you put them? Well, they certainly don't. There are a lot of cases that say the Advisory Committee notes are not the rule. They can't override the rule and they can't create an ambiguity in a rule that's otherwise clear. But this Court's decisions, and I think this is consistent with the Supreme Court as well, make clear that Advisory Committee notes can be looked to for guidance and guidance. And that's all we're asking for. In the minute or so that I have left, I'd just like to briefly address the issue of judicial estoppel, which, of course, is an alternative ground for affirmance. But it's significant, I think, that Chevron itself has not always thought that the 2010 amendments swept as broadly as they argue here today. And so like the Connor case from the Fifth Circuit, which we cite, this, too, is a case in which Chevron's position is squarely contradicted by positions that it took in other similar litigation when the shoe was on the other foot. Are we not in an abuse of discretion determination here as it relates to judicial estoppel? To the extent that judicial estoppel applies in the district court, that's correct, Your Honor. So if I'm reviewing it and I'm trying to determine what the district court did, it seems to me that given that there was, without question, intervening amendments to Rule 26, it would suggest to me the district court couldn't have abused its discretion in determining what it did. I mean, given what the standard is on judicial estoppel, and given what I've got to do, the party's later position is inconsistent, but an intervening change of law may be sufficient to rack it down. And I have an abuse of discretion standard. I'm having a tough time understanding then why that is an abuse of discretion on the district court's determination. Well, and that's what Judge Cousins determined. And that is correct as to some of the positions that Chevron took. But in two cases, the Allen case and the Barkhouse case, Chevron and Judge Cousins missed this. Chevron was arguing under the new version of the rules. The 2010 amendments had already been enacted. They were about to take effect. Chevron knew that by the time the decision occurred, those amendments would already have taken place, and yet Chevron still took the position that materials created by experts were not covered. For example, in fact, in both cases, Chevron argued that, quote, where an expert enters the judicial arena, all his work becomes discoverable. And then they go on to say that rule extends even further. Thank you for your answer. I think I got your argument. Okay. Thank you very much. Thank you. Mr. Boutrous, you've got a little over three minutes. Thank you, Your Honor. Let me just begin with the historical recounting that counsel did. The Meyer case from this Court is perfectly consistent with what we're arguing. The Court, this Court in that case said that, of course, the report and the opinion that the expert was going to give at trial needed to be disclosed. That's all that Court in that decision said. Same with the McKay case that counsel cited and all the other cases that the Fifth Circuit cited. The Courts have said all along, if you're going to call an expert to testify, then there can be discovery to test what they're going to say, to find out their opinions. That was the default rule. The Sixth Circuit in the regional Louisville Airport case I mentioned, I think, captured it. And counsels, the echoers never pointed to another case or anything that contradicts this. Prior to 1993, this is a quote, And the Pioneer case from the Federal Circuit also noted that it was that 1993 amendment that compelled disclosure of data or other information, that opened the floodgates and created this bright-line rule that required disclosure of all information in the hands of the public.  that compelled disclosure of data or other information, So I think that's the history. In going back to the language of the statute, I ask the Court to go back and just look at Rule 26b-1, which is the general provision that just says, it begs the question, it just says everything's discoverable unless it's privileged. That's what we're talking about here. Then 26b-3a and b create work product. It doesn't say anything about an agent having to be the person who creates the document. It says, by a party. So let's just focus on that for a second. Well, in 3, we're really talking about, a, documents and tangible things. That's all we're talking about there. Correct. And then they put trial preparation experts. That's 4. Why is that at all confused with 3? Because all they've done in b under 4 is they've said, well, as to trial preparation protection of draft reports and disclosures, 26b-3a and b protect the drafts. And so, therefore, that applies here. And when they go to c, they say trial preparation protection for communication between a party's attorney and expert witnesses. b-3a and b protect those. Otherwise, we've got three exceptions. It doesn't seem to me, then, that 3 has any idea as to experts at all. It doesn't. We've incorporated what part of 3 we need to incorporate. Your Honor, I think the fact that b-4 says rule 236b-3 protects this information supports our position. Well, what it says is we're saying what there is under experts, which is 4, we're saying what part that the experts have or don't have is protected. And it says where we even get it. And there it is, trial preparation for the draft reports and protection for the party's attorney and the expert witnesses. That's it. That's the end. I think our position is that that is confirmation that rule 26b-3 does protect information in the hands of an expert. If it weren't for b-4, that would mean draft reports would have to be disclosed, even if they included data or other facts. But this adds another layer of protection. The two cases I cited in my 28J letter yesterday had come up earlier, and I wanted to be able to refer the Court to them, the Ali case and the NAACP case. Note that Congress sometimes draws and italicizes or puts an exclamation point to make sure things are protected. That's what the b-4 provisions are, to make sure that draft reports are protected and to note that 26b-3 protected them. And, again, the documents, I'll just give you one more example. Give us your example. My example, one of the documents I referenced was created by Chevron, by its chief scientist. It's an e-mail analyzing and fused with the legal strategy and analysis of this Cabrera report, sent to the expert asking for help and strategizing about the information. How is that not covered by rule 26b-3? It was created by Chevron in anticipation of litigation, meant to be confidential. He's going to testify. He's a testifying expert. But he, the work product protection protects that document. That was what the rule was meant to provide. It's not facts or data that he was considered in connection with his testimony. It was helping respond to the report on the other side. Thank you very much. Appreciate your argument. Thank you. Both counsel, a very interesting argument. The case is submitted. We'll stand and recess.
judges: Silverman, Callahan, Smith